FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 08, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL LADUE and AMANDA LADUE,<br><br>                    Plaintiffs,<br><br>    v.<br><br>KETTLE FALLS INTERNATIONAL RAILWAY, LLC, and OMNITRAX, INC.,<br><br>                    Defendants. | No.  2:21-CV-00205-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**ECF No. 73** |

Before the Court is Plaintiff Michael Ladue's Motion for Partial Summary Judgment, ECF No. 73.  On September 28, 2022, the Court heard argument on the motion.  *See* ECF No. 117.  Dylan R. Williams and Scott H. Levy appeared on behalf of Plaintiffs.  Paul S. Stewart, Scott Cifrese, and Sabrina Affice appeared on behalf of Defendants.  Plaintiffs Michael LaDue and Amanda LaDue bring negligence and strict liability claims under the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, and in common law against Defendants Kettle

Falls International Railway, LLC ("KFR") and OmniTRAX, Inc. ("OmniTRAX"), railroad companies for whom Mr. LaDue performed work.  ECF No. 62.

Mr. LaDue moves for summary judgment as to his Second and Fourth[1] Causes of Action.  In these claims, Mr. LaDue alleges that Defendants violated federal railroad regulations and such violations caused Mr. LaDue's injuries, resulting in liability under a negligence per se theory.  ECF No. 73 at 1.  In his reply brief and at the September 28, 2022 motions hearing, Mr. LaDue limited the scope of his request, no longer seeking summary judgment but asking the Court to find that Defendants violated federal railroad regulations, that the violations played a role in causing Mr. LaDue's injury, and that, therefore, Mr. LaDue's comparative fault is irrelevant as a matter of law.  ECF No. 107 at 1-2.

For the reasons stated below, Mr. LaDue's motion is granted in part and denied in part.

---

[1] Mr. LaDue states he makes the motion regarding the Second and Fifth Cause of Action.  ECF No. 73 at 1.  The substance of his motion refers to 49 C.FR. §§ 214.315 and 220.33.  These regulations are the basis for his "Strict Liability" claims in his Second and Fourth Cause of Action, not the Fifth.  ECF No. 62 at 8-11.  His Fifth Cause of Action is based upon a regulation that does not appear in his motion.

**BACKGROUND**

The Court's November 18, 2022 Order Denying Defendants' Motion for Summary Judgment sets forth relevant and undisputed factual background. ECF No. 121 at 2-3. The undisputed facts discussed below supplement the record as needed for consideration of the instant motion.

On November 9, 2018, Mr. LaDue worked as a tamper operator on the Kettle Falls International Railway. ECF No. 112 at 1 ¶ 1. Mr. LaDue worked for All-American Track ("AAT"), a contractor that KFR retained to perform repair work. ECF No. 112 at 1 ¶ 2.

On November 9, 2018, Brady Peters, OmniTRAX's project manager for the San Poil Subdivision repair work, planned for all equipment to "tie down" at a location called "Boyds siding." ECF No. 112 at 1 ¶ 4, 2 ¶ 5. After Mr. LaDue competed his work on November 9, 2018, Mr. LaDue called Wyatt Willey, KFR's employee in charge ("EIC") assigned to Mr. LaDue's track crew, to ask to tie down at a different yard, called the "Kettle Falls yard." ECF No. 112 at 2 ¶ 19. Mr. Willey gave Mr. LaDue permission to take his equipment to the Kettle Falls yard rather than Boyds siding. ECF No. 112 at 2 ¶ 20.

As Mr. LaDue travelled to the Kettle Falls yard, he called out his milepost locations on the radio. ECF No. 112 at 2-3 ¶ 35. Mr. Willey heard Mr. LaDue call out his milepost locations but did not respond. ECF No. 112 at 3 ¶ 36.

1    Mr. LaDue was unaware that there was a row of stationary railcars on the

2    track between him and his destination.  ECF No. 112 at 3 ¶ 51.  Mr. LaDue saw the

3    stationary railcars and attempted to stop the tamper.  ECF No. 112 at 3 ¶ 51.  The

4    tamper slowed, slid, collided with the railcars, and partially ejected Mr. LaDue,

5    causing him to lose consciousness and suffer injury.  ECF No. 112 at 3 ¶ 52, 4 ¶

6    53.

7    Plaintiffs filed their Complaint on October 5, 2020.  ECF No. 1.  Plaintiffs

8    filed an Amended Complaint on July 7, 2022.  ECF No. 62.

9    **SUMMARY JUDGMENT STANDARD**

10    A district court must grant summary judgment "if the movant shows that

11    there is no genuine dispute as to any material fact and the movant is entitled to

12    judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*,

13    477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906

14    (9th Cir. 2019).  A party may move for summary judgment on part of a claim or

15    defense.  Fed. R. Civ. P. 56(a); *Corp. of Gonzaga Univ. v. Pendleton Enters., LLC*,

16    55 F. Supp. 3d 1319, 1321 (E.D. Wa. 2014).  "A fact is 'material' only if it might

17    affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier

18    of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v.*

19    *Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson*

20    *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL
LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 4

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)). A moving party who bears the burden of persuasion at trial must show that "no reasonable trier of fact could find other than for the moving party." *Engley Diversified, Inc. v. City of Port Orchard*, 178 F. Supp. 3d 1063, 1070 (W.D. Wash. 2016) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).

Once the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate by affidavits, depositions, answers to interrogatories, or admissions on file "specific facts" showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts "are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255. "Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" *Fresno Motors*,

1    771 F.3d at 1125 (quoting *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988

2    (9th Cir. 2006). "[W]hen parties submit cross-motions for summary judgment,

3    [e]ach motion must be considered on its own merits," but the court must consider

4    all evidence submitted in support of both cross-motions when separately reviewing

5    the merits of each motion. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside*

6    *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (second alteration in original).

### DISCUSSION

8        FELA provides, in relevant part, that "[e]very common carrier by railroad,"

9    while engaged in interstate or international commerce, "shall be liable in damages

10   to any person suffering injury while he is employed by such carrier in such

11   commerce . . . ." 45 U.S.C. § 51. "FELA . . . impose[s] upon the employer the

12   duty of paying damages when injury to the worker is caused, in whole or in part,

13   by the employer's fault. This fault may consist of . . . a breach of some statutory

14   duty." *Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958).

15       As a preliminary matter, FELA provides a remedy for employees against

16   their employer railroads. Defendants, in their motion for summary judgment,

17   argued that Mr. LaDue was not their employee when he suffered injury, and

18   therefore, his FELA claims should be dismissed. ECF No. 67 at 2. The Court

19   denied Defendants' motion because there are disputed facts which, if established at

20   trial, may lead a reasonable jury to conclude that Mr. LaDue was "employed" by

Defendants for FELA purposes.  ECF No. 121 at 20.  Defendants make the same argument in opposition to Mr. LaDue's motion for summary judgment, and the Court's conclusion remains the same.

Mr. LaDue asks the Court to find that Defendants did, in fact, violate federal railroad regulations, that those violations caused Mr. LaDue's injuries, and that any comparative fault on the part of Mr. LaDue may not serve as a defense.  ECF No. 107 at 1-2.

**A. Violations of Railroad Safety Regulations**

Congress has directed the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety[.]"  49 U.S.C. § 20103(a); *see also Ass'n Am. R.Rs. v. Dep't of Transp.*, 198 F.3d 944, 945-46 (D.C. Cir. 1999).  The Secretary of Transportation has delegated its authority to promulgate regulations related to railroad safety to the Federal Railroad Administrator.  49 C.F.R. § 1.89 (2022); *see also* 49 U.S.C. § 103 (creating the Federal Railroad Administration ("FRA")).  Mr. LaDue argues that there remains no genuine dispute that Defendants violated two federal railroad regulations.

*1.  49 C.F.R. § 214.315*

The FRA promulgated a set of Railroad Workplace Safety regulations at 49 C.F.R. Subtit. B, Ch. II, Pt. 214, and more specifically, Roadway Worker Protection regulations at Subpart C, known as the Roadway Worker Protection

Rule ("RWPR").  *See Zimmerman v. Long Island R.R.*, 2 F. App'x. 172, 173 (2d Cir. 2001); *Ass'n Am. R.Rs.*, 198 F.3d at 946; *Lessert v. BNSF Ry. Co.*, 476 F. Supp. 3d 926, 942 (D.S.D. 2020); *Robinson v. AMTRAK*, No. 18-341, 2019 U.S. Dist. LEXIS 122541, at *10 (E.D. Penn. July 22, 2019).  RWPR, Section 214.315, provides as follows:

> (a)    When an employer assigns a duty to a roadway worker that calls for that employee to foul a track, the employer shall provide the employee with an on-track safety job briefing that, at a minimum, includes the following:
>
>> (1)    Information on the means by which on-track safety is to be provided for each track identified to be fouled;
>>
>> (2)    Instruction on each on-track safety procedure to be followed;
>>
>> . . .
>>
>> (4)    A discussion of the nature of the work to be performed and the characteristics of the work location to ensure compliance with this subpart;
>>
>> . . .
>
> (b)    A job briefing for on-track safety shall be deemed complete only after the roadway worker(s) has acknowledged understanding of the on-track safety procedures and instructions presented. . . .
>
> . . .
>
> (d)    Before any member of a roadway work group fouls a track, the roadway worker in charge . . . shall inform each roadway worker of the on-track safety procedures to be used and followed during the performance of the work at that time and location.  Each roadway worker shall again be so informed at any time the on-track safety

procedures change during the work period. Such information shall be given to all roadway workers affected before the change is effective[.]

Mr. LaDue argues that Defendants violated Section 214.315 twice on the day of his injury. ECF No. 73 at 10-11. First in the morning, and again when Mr. LaDue and Mr. Willey discussed taking the tamper to the Kettle Falls yard.

a. Morning Job Briefing

The parties agree that on the morning of November 9, 2018, Mr. Peters, OmniTRAX's project manager, conducted a job briefing and Mr. LaDue was present. *See* ECF No. 74 at 2-3 ¶¶ 10-18; ECF No. 86 at 6-8. Mr. Peters lacks specific memory of the briefing that morning but explains that "[o]ver the course of the Project, [he] typically led, with the assistance of management from Project contractors, daily, high-level morning project briefings." ECF No. 87 at 2 ¶ 4. Mr. Willey, KFR's EIC, confirmed in deposition that Mr. Peters conducted a job safety briefing the morning of November 9, 2018, and that he personally conducted another briefing with his crew. ECF No. 75-6 at 24:4-9. Mr. LaDue confirmed in deposition that "on the day of the incident . . . there [was] a job briefing at the Maintenance of Way shed" conducted by Mr. Peters. ECF No. 90-1 at 128:5-13, 129:9-15. Mr. LaDue testified that he "[does not] recall Mr. Willey conducting a job safety briefing" that morning, but that it was "general procedure . . . that the EIC would hold an on-track safety meeting." ECF No. 90-1 at 134:1-12.

The posture of the case leads to a three-fold analysis:  First, whether Defendants "assign[ed] a duty" to Mr. LaDue "that call[ed] for [Mr. LaDue] to foul a track" such that Section 214.315(a) mandated Defendants give him an on-track safety job briefing;[2] second, whether the content of the briefings that occurred on the morning of November 9, 2018 satisfied Section 214.315(a)(1)-(5) and (d); and third, whether the briefings were "complete" within the meaning of Section 214.315(b), in that Mr. LaDue "acknowledged understanding of the on-track safety procedures and instructions presented."

---

[2] Section 214.315(a) specifically applies when an "employer" assigns a duty to an "employee[.]"  Defendants argue that "Mr. LaDue was not an employee of KFR or OmniTRAX" and therefore FELA does not apply.  ECF No. 85 at 4.  An "employee" for the purposes of the RWPR is "an individual who is engaged or compensated by a railroad or by a contractor to a railroad to perform any of the duties defined in this part."  49 C.F.R. § 214.7.  The regulations apply to Mr. LaDue regardless of whether he was an "employee" or a "contractor."  The parties' dispute as to Mr. LaDue's employment status is the subject of the Court's November 18, 2022 Order, and considers the issue no further here.  *See* ECF No. 121.

1

2

i.   Whether Defendants assigned Mr. LaDue a duty that called for him to Foul a Track

3

The first question is not in dispute.  The parties agree that "Mr. LaDue's

4

duties that day included surfacing and aligning track and repairing track defects

5

with the tamper."  ECF No. 112 at 1 ¶ 2.  Mr. LaDue provides that "[a] tamper is a

6

motorized, rail-mounted machine used to tamp track ballast under railway tracks."

7

ECF No. 73 at 2 n.1.  Defendants assigned him this duty.  ECF No. 112 at 1 ¶¶ 2-4.

8

Defendants admit that Mr. LaDue "was operating his railroad tamper machine on

9

KFR's tracks[.]"  ECF No. 85 at 2.  This meets the statutory definition of fouling a

10

track, which is to place "an individual or an item of equipment in such proximity to

11

a track that the individual or equipment could be struck by a moving train or on-

12

track equipment[.]"  49 C.F.R. § 214.7.  Because Mr. LaDue's duty included for

13

both himself and the tamper he operated to foul a track, the RWPR mandated that

14

Defendants provide him an on-track safety job briefing under Section 214.315(a).

15

ii.   Whether the Content of the Morning Briefing Satisfied Section 214.315(a)(1)-(5) and (d)

16

Section 214.315(a) requires that on-track safety briefings include certain

17

content, for example, "[i]nformation on the means by which on-track safety is to be

18

provided for each track identified to be fouled[,]" and "[a] discussion of the nature

19

of the work to be performed and the characteristics of the work location[.]"  49

20

C.F.R. § 214.315(a)(1), (4).  Mr. LaDue does not contest the sufficiency of the

content of the morning briefings other than to assert that Mr. Willey and Mr.

LaDue were confused as to where the tamper was to be tied down that evening.

*See* ECF No. 74 at 3 ¶ 18 ("Since all parties briefed were not clear on the

instructions for the day of the incident . . . Mr. Peters did not conduct a proper job

safety briefing that day.").  Mr. Peters declares that on November 8, 2018, the day

before the incident, he circulated a handout which stated, "At [sic] END OF SHIFT

11/09 – NO EQUIPMENT IS TO BE TIED DOWN ANYWHERE BUT SOUTH

END OF BOYDS[.]"  ECF No.  87 at 2 ¶ 4; ECF No. 87-1.  Mr. Willey reports

seeing this handout the following day, November 10, 2018, but admits that it is

possible Mr. Peters first discussed where to tie down at the job safety briefing the

morning of November 9, 2018.  ECF No. 75-6 at 25:9-14.  Mr. Peters states:

> I don't know how I could have been clearer about the November 9,
> 2018 tie down location.  Although I do not have a specific memory of
> orally discussing this instruction at the November 8 or 9, 2018 job
> briefings, it would have been my standard practice to discuss with
> crews at my high-level project briefing where to tie down at the end of
> the workday.

ECF No. 87 at 2 ¶ 5.  In his deposition, Mr. Peters was asked whether he made sure

Mr. Willey knew to tie down at Boyds at the end of the day on November 9, 2018,

and Mr. Peters responded "[i]f it was specifically stated, I don't recall, but it was

definitely in his instructions."  ECF No. 75-5 at 129:3-7.  In a November 10, 2018

Report, Mr. Peters discusses an interview with Mr. Willey on November 10, 2018,

during which Mr. Willey indicated he thought the plan was to tie down at the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL
LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 12

Kettle Falls yard. ECF No. 75-12 at 4. Mr. LaDue reports that, in the morning meeting, Mr. Peters instructed to "bring the equipment back to the Kettle Falls yard[.]" ECF No. 75-1 at 129:16-24.

The morning briefings can only be recounted by deposition testimony that is, by the admission of those deposed, faulty. There exists a genuine dispute as to whether the briefings on the morning of November 9, 2018, included the information necessary for compliance with Section 214.315(a).

Regarding Section 214.315(d)'s requirement that the roadway worker in charge ("RWIC") inform each roadway worker of the on-track safety procedures to be used during the work, it is not disputed that Mr. Willey was the RWIC. ECF No. 112 at 2 ¶ 5; ECF No. 74 at 2 ¶¶ 5-7; ECF No. 86 at 2-3. Mr. Willey testified that he conducted a job safety briefing on the morning of November 9, 2018, ECF No. 75-6 at 24:4-9, and Mr. LaDue testified that while he did not recall whether Mr. Willey did so that morning, it was general practice for him to do so. ECF No. 90-1 at 134:1-12. Mr. LaDue does not challenge the sufficiency of this briefing.

> iii.    Whether the Briefings were "Complete" Within the Meaning of Section 214.315(b)

In order for a job briefing for on-track safety under Section 214.315(a) to be "complete," roadway workers must have "acknowledged understanding of the on-track safety procedures and instructions presented." 49 C.F.R. § 214.315(b). FRA

guidance[3] on the subject provides that railroads can satisfy this requirement in different ways, including to ask for a signature from participating employees, or to simply ask questions to ascertain understanding.  Federal Railroad Administration, U.S. Department of Transportation, Track and Rail and Infrastructure Integrity Compliance Manual: Volume III – Chapter 3 – Roadway Worker Protection at 3.3.14 (2018), available at https://railroads.dot.gov/elibrary/track-and-rail-and-infrastructure-integrity-compliance-manual-volume-iii-chapter-3-0 (last visited Dec. 7, 2022) (hereinafter "FRA RWP Guidance").

Mr. LaDue argues that neither he nor Mr. Willey acknowledged an understanding of the on-track safety procedures and instructions presented.  ECF No. 73 at 10.  Mr. LaDue's evidence, as Defendants observe, is "deficient memories" and "a lack of documentation[.]"  ECF No. 85 at 7.  Mr. LaDue presents excerpts of depositions wherein Mr. Willey and Mr. LaDue state that they cannot recall certain conversations that occurred on November 9, 2018, or that they

---

[3] Where a regulation is "genuinely ambiguous" and after the court has made "an independent inquiry into whether the character and context of the agency interpretation entitles it to controlling weight[,]" the court may "defer to an agency's construction of its own regulation."  *Love v. Marriott Hotel Servs.*, 40 F.4th 1043, 1047 (9th Cir. 2022).

recall being told to tie down at the Kettle Falls yard.  ECF No. 107 at 2-3 (citing ECF No. 75-6 at 25:3-17; ECF No. 108-1 at 118:4-9; ECF No. 75-1 at 129:16-24). Mr. LaDue presents Mr. Peters' deposition, where Mr. Peters states that he does not recall whether he secured Mr. Willey's acknowledgment to tie down track equipment at Boyds.  ECF No. 107 at 3 (citing ECF No. 75-5 at 129:3-12).

Mr. LaDue bears the burden of proof at trial and his attempt to shift the burden to Defendants to produce evidence showing that they secured his understanding of the plan to tie down the tamper is inappropriate.  *Rookaird*, 908 F.3d at 459 ("Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.").  He has failed to demonstrate the lack of a genuine dispute over whether Mr. LaDue acknowledged an understanding of the relevant safety procedures.  There is conflicting evidence that the Court must construe in the light most favorable to Defendants.  *Anderson*, 477 U.S. at 255.

b.  Afternoon Job Briefing

It is undisputed that "[i]n the afternoon of November 9, 2018, Mr. LaDue called Mr. Willey on the radio and requested permission to tie up his tamper at Kettle Falls."  ECF No. 112 at 2 ¶ 19 (citing ECF No. 75-6 at 16:14-17:17). Further, "Mr. Willey testified that he gave LaDue permission to bring the tamper back to Kettle Falls."  ECF No. 112 at 2 ¶ 20 (citing ECF No. 75-6 at 17:7-17).

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 15

Mr. LaDue argues that Mr. Willey was required to, and failed to, provide a job briefing sufficient to satisfy Section 214.315.  ECF No. 73 at 11-12; ECF No. 107 at 6.

The parties do not dispute that "Mr. Willey was obligated to perform an additional job safety briefing when he authorized Mr. LaDue to go back to Kettle Falls yard."  ECF No. 112 at 2 ¶ 21 (citing ECF No. 75-5 at 100:23-101:4).  Indeed, many of Defendants' employees acknowledge that Mr. Willey should have conducted a briefing before sending Mr. LaDue to the Kettle Falls yard.  *See* ECF No. 75-3 at 77:4-78:1; ECF No. 75-5 at 100:23-101:20; ECF No. 75-7 at 43:3-7.  Defendants frame this obligation as arising out of Section 214.315(d).  ECF No. 85 at 10-11.  Mr. LaDue discusses an obligation as arising under Section 214.315(d).  However, he further argues that Defendants failed their obligation under "Section 214.315(a)(2) and (4)[.]".  ECF No. 73 at 11.

Sections 214.315(a) and (d) have different obligations with different triggering conditions.  Section 214.315(a) requires that "[w]hen an employer assigns a duty to a roadway worker that calls for that employee to foul a track, the employer shall provide the employee with an on-track safety job briefing[.]"

As the United States District Court for the District of South Dakota observed, "'[a]ssign' is not defined in the regulations," so the Court applies an ordinary, contemporary, common meaning.  *Lessert v. BNSF Ry. Co.*, 476 F. Supp.

3d 926, 939 (D.S.D. 2020).  "Merriam-Webster defines assign, as relevant here, as 'to appoint to a post or duty' or 'to appoint as a duty or task[.]'"  *Id.* at 939 (citing Assign, Merriam-Webster.com Dictionary).  The extent to which "assign" includes later changes or deviations from a day's plan is "genuinely ambiguous," warranting deference to the FRA's construction.  *Love*, 40 F.4th at 1047 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019)).  The FRA provides that Sections 214.315(a) and (b) "essentially require a job briefing to inform all concerned of on-track safety methods at the beginning of each work period."  FRA RWP Guidance 3.3.13.  Sections 214.315(a) and (b), therefore, anticipate an on-track safety job briefing that occurs before the work begins and gives a review of all on-track safety procedures to be observed in the work expected to occur.

Defendants argue that the plan for the equipment at the end of the day on November 9, 2018, as evidenced by Mr. Peters' declaration and notes dated November 8, 2018, was for all equipment to tie down at the south end of Boyds.  ECF No. 87 at 2-3 ¶¶ 5-7; ECF No. 87-1.  Defendants agree that Mr. Willey later instructed Mr. LaDue to tie down at the Kettle Falls yard, a deviation from the plan.  ECF No. 112 at 2 ¶¶ 19-20.  Mr. LaDue was instructed to travel to a different location to end the day than originally planned, rather than "reassigned" to a new duty, and therefore, these circumstances do not raise the obligation in Section

214.315(a) and (b).  The Court declines to find that Defendants violated Section

214.315(a) and (b) in the afternoon of November 9, 2018.

In contrast, these circumstances do clearly raise Section 214.315(d)'s

obligation.  Section 214.315(d) requires that "any time the on-track safety

procedures change during the work period" the RWIC "shall inform each roadway

worker of the on-track safety procedures to be used and followed during the

performance of the work at that time and location."  According to Defendants'

expert, Mr. Willey had a "track warrant" with limits from milepost ("MP") 6 to

MP 20 on the day of the incident.  ECF No. 88-1 at 7.  "Working limits" are

defined by regulation as "a segment of track with definite boundaries . . . upon

which trains and engines may move only as authorized by the roadway worker

having control over that defined segment of track."  49 C.F.R. § 214.7.  Again,

Mr. Willey was the RWIC.  ECF No. 88-1 at 7.  The Kettle Falls yard was beyond

MP 6 and outside of Mr. Willey's working limits.  ECF No. 88-1 at 8.  The limits

between MP 0, where the Kettle Falls yard was, and MP 6, were "not controlled"

and "designated as Rule 6.28 Other Than Main Track[.]"  ECF No. 88 at 2 ¶ 4, 6 ¶

15; ECF No. 88-1 at 8.  "Rule 6.28" refers to the General Code of Operating Rules

("GCOR"), Rule 6.28 is entitled "Movement on Other than Main Track."  The

GCOR is a set of rules for train operations, and KFR uses GCOR to govern

operations on their lines.  ECF No. 85 at 2 n.1; ECF No. 89-1 at 6.  Rule 6.28

1  requires that "trains or engines must move at a speed that allows them to stop

2  within half the range of vision short of:  Train, Engine, Railroad car, Men or

3  equipment fouling the track, Stop signal, or Derail or switch lines improperly."

4  ECF No. 88-1 at 4-5.

5          By Defendants' admission, Mr. LaDue was not meant to enter into GCOR

6  6.28 uncontrolled territory during the execution of his duties that day, yet he did,

7  and at the direction of KFR's EIC.  Defendants' argument that "the on-track safety

8  procedures for Ladue did not change, only the tie down point changed" is

9  obfuscation.  ECF No. 85 at 12.  As Mr. LaDue crossed MP 6 on his way to the

10  Kettle Falls yard, "the on-track safety procedures change[d] during the work

11  period."  49 C.F.R. § 214.315(d).  Mr. Willey was obligated to inform Mr. LaDue

12  of the change in on-track safety protocols.

13          Mr. LaDue has demonstrated that Mr. Willey did not offer a briefing to

14  satisfy the requirements of Section 214.315(d).  There is no genuine dispute of fact

15  that Mr. Willey did not "inform" Mr. LaDue of the on-track safety procedures.

16  Mr. Willey testified that he did not have a job briefing with Mr. LaDue about going

17  to the Kettle Falls yard.  ECF No. 75-6 at 27:22-28:6, 35:22-25.  Defendants argue

18  that the on-track job briefing occurred because Mr. LaDue contacted Mr. Willey,

19  Mr. Willey contacted Mr. Peters to "see if this was okay," Mr. Peters approved,

20

1   and Mr. Willey communicated to Mr. LaDue that he could proceed to the yard.

2   ECF No. 85 at 11-12.

3        Defendants argue that "the substance of the exchange between Ladue [sic],

4   Willey, and Peters is disputed."  ECF No. 85 at 11-12.  Whether Mr. Willey

5   contacted Mr. Peters during the interaction is disputed.  *Compare* ECF No. 75-6 at

6   17:11-13 ("I contacted Brady on the cell phone and asked him") with ECF No. 87

7   at 4 ¶ 9 ("I understand that Willey claims that . . . he called me and asked my

8   permission for this movement, which, according to Willey, I granted.  This is not

9   true.").  Yet, the "substance" of the exchange is not material.  The material fact for

10  Section 214.315(d) is whether Mr. Willey informed Mr. LaDue of the on-track

11  safety procedures.  The only witnesses to the exchange are Mr. Willey and

12  Mr. LaDue, and the only recounting presented to the Court with any detail is that

13  of Mr. Willey.  Mr. Willey states very clearly that he did not conduct a briefing in

14  the afternoon.  ECF No. 75-6 at 35:22-25.

15       Defendants offer the expert report of David Brookings, P.E., to support their

16  argument that the exchange between Mr. LaDue and Mr. Willey was sufficient.

17  Mr. Brookings opines, "[a] job rebriefing is to ensure that everyone is on the same

18  page when working conditions change; that occurred here."  ECF No. 88 at 5 ¶ 12.

19  Defendants and Mr. Brookings place the burden on Mr. LaDue to understand that

20  he was entering GCOR 6.28 territory and to operate the tamper accordingly.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL
LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 20

1    Mr. LaDue's awareness that the track beyond MP 6 was "6.28 limits" and his

2    training on GCOR does not obviate Mr. Willey's obligation as RWIC to inform

3    him of the on-track safety procedures as required by Section 214.315(d).  ECF No.

4    75-6 at 18:20-22 ("[Mr. LaDue] called over the radio that he was entering 6.28

5    limits . . . , Yeah, that's yard limits."); ECF No. 94-3 at 97:8-18.

6         The FRA guidance offers an example of an RWIC informing a workgroup of

7    changing safety methods.  FRA RWP Guidance at 3.3.16.  If, during a work

8    period, workers are working on a track within working limits and the on-track

9    safety method changes to train approach warning, "all roadway workers fouling the

10   track must first be informed that trains might approach on that track and that they

11   will be warned of the approaching train by watchmen/lookouts" and the workers

12   "must also know that they can no longer depend on that track as a place of safety

13   when a train approaches."  FRA RWP Guidance at 3.3.16.  In the offered example,

14   the roadway workers are not merely recited the name of codified procedures, they

15   are informed of the specific practices used to maintain safety.  There was no

16   discussion of the practices to be employed for on-track safety before Mr. LaDue

17   entered into GCOR 6.28 territory.

18        Mr. LaDue has met his burden to demonstrate the absence of a genuine

19   dispute that Mr. Willey, and therefore Defendants, did not comply with the Section

20   214.315(d).  *Celotex*, 477 U.S. at 323.  Defendants have failed to raise a genuine

dispute in response.  The Court finds as a matter of law that Defendants violated

the RWPR.

### 2.  *49 CFR § 220.33*

The FRA has promulgated at 49 C.F.R. Subtit. B, Ch. II, Pt. 220, a set of

regulations entitled Railroad Communications.  49 C.F.R. § 220.33 provides as

follows:

> (a)    Upon receiving a radio call, an employee shall promptly acknowledge the call, identifying the employee's station in accordance with the requirements of § 220.27 and stand by to receive.  An employee need not attend the radio during the time that this would interfere with other immediate duties relating to the safety of railroad operations.
>
> (b)    An employee who receives a transmission shall repeat it to the transmitting party unless the communication:
>
> > (1)    Relates to yard switching operations;
> >
> > (2)    Is a recorded message from an automatic alarm device; or
> >
> > (3)    Is general in nature and does not contain any information, instruction or advice which could affect the safety of a railroad operation.

On the day of the incident, Mr. LaDue traveled towards the Kettle Falls yard and

called out mileposts on his radio as he passed.  ECF No. 75-6 at 18:20-19:8.

Mr. LaDue argues that Mr. Willey heard him on his radio, but did not answer as

required by Section 220.33.  Defendants argue that the milepost callouts were

general in nature, thus obviating the need for a response.  Mr. LaDue offers no

1  authority supporting the notion that callouts of milepost location is not "general."

2  Indeed, Mr. Ladue had a practice of calling out milepost locations no matter where

3  he went.  ECF No. 10 at 131:21-132:1.  Yet, some of Defendants' employees have

4  testified that they might have responded to Mr. LaDue, had they heard him on the

5  radio.  ECF No. 75-2 39:15-22; ECF No. 75-5 at 272:8-23.

6          In this circumstance, Mr. LaDue's milepost location affected the safety of

7  his operation.  However, he has failed to rebut that his actions were of a "general"

8  nature as the term is used in Section 220.33(b)(3).  Moreover, Section 220.33

9  cannot be said to impose a duty of precognition.  While the code may have

10  required Mr. Willey to inform Mr. LaDue of standing cars in is path, Mr. Willey

11  was unaware of the threat.  Mr. LaDue has not demonstrated that he is entitled, as a

12  matter of law, to a finding that Defendants violated Section 220.33.  The Court

13  denies summary judgment as to a violation of Section 220.33.

14  **B. Causation**

15          "FELA . . . impose[s] upon the employer the duty of paying damages when

16  injury to the worker is caused, in whole or in part, by the employer's fault.  This

17  fault may consist of a breach of the duty of care, analogous but by no means

18  identical to the general common-law duty, or of a breach of some statutory duty."

19  *Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958); *see also MacDonald*

20  *v. Kahikolu, Ltd.*, 581 F.3d 970, 972 (9th Cir. 2009).  In *Reis v. AMTRAK*, the

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF MICHAEL
LADUE'S MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

1  Third Circuit explained that "[i]t is well-settled that the FELA requires a finding of

2  negligence per se when there has been a violation of a safety statute specifically

3  aimed at the railroad industry."  960 F.2d 1156, 1159 (3d Cir. 1992).  The Third

4  Circuit cited to *Crane v. Cedar Rapids & I. C. R. Co.*, where the Supreme Court

5  held that a plaintiff employee need only "prove . . . the statutory violation" and is

6  thereby "relieved of the burden of proving negligence."  395 U.S. 164, 166 (1969).

7  The Third Circuit also cited to *Urie v. Thompson*, where the Supreme Court held

8  that certain regulations "are substantively if not in form amendments to [FELA].

9  They dispense, for the purposes of employees' suits, with the necessity of proving

10  that violations of the safety statutes constitute negligence."  337 U.S. 163, 176

11  (1949).

12        The Court has found that there is no genuine dispute that Defendants

13  violated Section 214.315(d) by failing to inform Mr. LaDue of a change in on-track

14  safety procedures.  In their response, Defendants argue that "there are questions of

15  material fact of whether Mr. Ladue's accident was caused by Defendants' alleged

16  technical violations or some other cause, i.e., Ladue's own negligence."  ECF No.

17  85 at 4.  However, they do not offer a substantive rebuttal as to causation.  Indeed,

18  case law instructs that Mr. LaDue's burden is low, and that he is "entitled to

19  recover damages if [Defendants'] violation played any part in causing his injury,

20  no matter how slight."  *MacDonald*, 581 F.3d at 972-73.  Still, the Court cannot

1  conclude that Defendants' failure to inform Mr. LaDue of GCOR 6.82's operating

2  procedures played a part in causing his injury.  There is no testimony supporting

3  that conclusion and the Court is required to make all inferences in Defendants'

4  favor.  On this record, whether Defendants' failure played any part in causing

5  Mr. LaDue's injury is a question for the jury, not for the Court.

6  **C. Comparative Negligence**

7          FELA provides that an employee's contributory negligence "shall not bar a

8  recovery, but the damages shall be diminished by the jury in proportion to the

9  amount of negligence attributable to such employee[.]"  45 U.S.C. § 53.  However,

10  in a case "where the violation by such common carrier of any statute enacted for

11  the safety of employees contributed to the injury or death of such employee[,]"

12  FELA provides that "no such employee who may be injured or killed shall be held

13  to have been guilty of contributory negligence[.]"  *Id.*; *see also Urie*, 337 U.S. at

14  188.  Mr. LaDue asks the Court to foreclose a contributory negligence defense

15  because, he argues, Defendants' violations of federal railroad safety regulations

16  contributed to his injury.  ECF No. 73 at 15.

17          As stated above, Mr. LaDue has not established that he is entitled to partial

18  summary judgment as to several of his allegations of regulatory violations, and as

19  to Defendants' violation of Section 214.315(d), Mr. LaDue has not established the

20  lack of a genuine despite that such violation caused his injuries.  Given that he has

not established causation, the Court cannot find that, as a matter of law, his alleged

comparative negligence is irrelevant.

## CONCLUSION

Mr. LaDue has demonstrated that there is no genuine dispute of material fact

as to whether Defendants violated 49 C.F.R. § 214.315(d).  The Court grants

partial summary judgment as to that fact.  Mr. LaDue has failed to meet his burden

as to all other request in his motion.

Accordingly, **IT IS HEREBY ORDERED:**

1.  Plaintiff Michael Ladue's Motion for Summary Judgment, **ECF No. 73**,

is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this

Order and provide copies to the parties.

DATED December 8, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE